IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLIOIS

| | | |
|---|---|---|
| MEGAN JACKSON-JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Megan Jackson-Johnson, by and through her attorneys, Hart McLaughlin & Eldridge, LLC, and Ben Crump Law, states as follows for her Complaint against State Farm Mutual Automobile Insurance Company ("State Farm"):

### INTRODUCTION

1. After joining State Farm in or around May 2019, Megan Jackson-Johnson, an African American woman, confronted State Farm's culture of racism and discrimination which ultimately resulted in her constructive discharge.

2. As a State Farm Administrative Assistant in Richardson, Texas, Ms. Jackson-Johnson witnessed and experienced discrimination from various co-workers and supervisors, but most notably, from her direct supervisor Rick Brinkley.

3. Ms. Jackson-Johnson reported this behavior to State Farm's Human Resources department.

4. After reporting this behavior, Ms. Jackson-Johnson was chastised by her supervisor Rick Brinkley to such an extent that Ms. Jackson-Johnson was forced to undergo mental health treatment.

5. Ultimately, Ms. Jackson-Johnson's therapist recommended that Ms. Jackson-Johnson leave State Farm's employ due to the discrimination, hostility, and the resulting psychological damage.

6. Ms. Jackson-Johnson subsequently filed a complaint and a Charge of Discrimination with the federal Equal Employment Opportunity Commission ("E.E.O.C.").

7. Thereafter, the E.E.O.C. issued a "Right-to-Sue" letter to Ms. Jackson-Johnson' giving rise to this lawsuit

## JURISDICTION AND VENUE

8. On October 19, 2022, a Notice of Right to Sue letter was issued to Megan Johnson-Jackson by the E.E.O.C.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action involves federal questions regarding the deprivation of Plaintiff's rights under 42 U.S.C. § 2000e and 42 U.S.C. § 1981.

10. This Court has personal jurisdiction over the Defendant because the Defendant has its principal place of business within this jurisdiction.

11. Venue is proper in this jurisdiction under 42 U.S.C. § 2000e-5(f)(3) because Defendant's unlawful employment practice was committed in this judicial district, and the employment records relevant to their unlawful practices are

maintained and administered in this judicial district. Alternatively, Defendant's principal office is within this judicial district.

## PARTIES

12. Megan Jackson-Johnson is an African American female, and a former employee of State Farm.

13. At all relevant times, Megan Jackson-Johnson was employed by State Farm in the Richardson, Texas office.

14. State Farm is a large group of insurance companies throughout the United States with its corporate headquarters in Bloomington, Illinois.

15. Defendant's headquarters and principal office in Bloomington, Illinois maintains and administers relevant employment records, including individual employee employment records, manager employment records, employee handbooks, discrimination and harassment policies, and discrimination and harassment investigation materials.

16. State Farm is an employer as defined by Title VII of the Civil Rights Act of 1964 and was, at all relevant times to this complaint, Ms. Jackson-Johnson's employer.

## BACKGROUND

17. On or around May 6, 2019, Megan Jackson-Johnson began her employment with State Farm as an Administrative Assistant.

18. Megan Jackson-Johnson was the one of only two African-American on her approximately thirteen member State Farm team.

19. Megan Jackson-Johnson was subjected to racism, harassment, racial discrimination, and a hostile work environment by co-workers and supervisors.

20. By way of background, Megan Jackson-Johnson was diagnosed with a medical condition that required her to be away from her desk from time-to-time during the workday.

21. This did not interfere with her ability to perform her work duties.

22. Though these periods of time away from her desk were short, an "away" notification on Ms. Jackson-Johnson Skype profile alerted her State Farm team members to the fact that she was "away" from her desk.

23. Though Megan Jackson-Johnson's time away from her desk was not significantly different than any of her non-African American co-workers, she was disciplined for it.

24. In fact, Megan Jackson-Johnson received the highest level of discipline (short of termination) for her purported "timeclock violation."

25. As part of her discipline, Megan Jackson-Johnson was required to attend "emotional intelligence classes."

26. When Ms. Megan Jackson-Johnson asked her supervisor Rick Brinkley to explain the nexus between her alleged "timeclock violation" and her required "emotional intelligence classes," none was provided.

27. Megan Jackson-Johnson's non-African American co-workers were not disciplined in any manner whatsoever for their similar time "away" from their desk.

28. Then, in and around November 2021, Rick Binkley – who is white – circulated a presentation regarding "Code Switching."

29. "Code switching" occurs when black employees adjust their behavior, appearance, and vernacular to accommodate the norms of Caucasian culture.

30. Rick Binkley's act of circulating such a presentation to his team served to pressure Ms. Jackson-Johnson into engaging in code-switching behavior.

31. Thereafter, Rick Binkley called a team meeting to discuss "code switching."

32. During this meeting, Ms. Jackson-Johnson's co-workers made various racist and discriminatory comments which Rick Binkley failed to condemn or otherwise address.

33. Shortly thereafter, Rick Binkley distributed, Ms. Jackson-Johnson's performance review to their entire team, disclosing the discipline and "emotional intelligence" training which Ms. Jackson-Johnson had been unfairly subjected to, causing her great embarrassment.

34. Megan Jackson-Johnson's non-African American co-workers' performance reviews were not similarly distributed to their team.

35. In response, Ms. Jackson-Johnson complained to State Farm's Human Resources Department about Rick Bentley's conduct, including publicizing Ms. Jackson-Johnson's performance review and pressuring her to engage in "code switching" behavior.

36. Rick Bentley then requested a meeting with Ms. Jackson-Johnson and chastised Ms. Jackson-Johnson for raising these issues with Human Resources.

37. Rick Bentley's reprimand was so severe, that Ms. Jackson-Johnson was forced to undergo mental health treatment.

38. During the course of this treatment, Ms. Jackson-Johnson's mental health treater advised her that the treatment she was being subjected to was the cause of her mental health injuries and that she needed to terminate her employment with State Farm.

39. As such, the discrimination, harassment, and hostile work environment Ms. Jackson-Johnson experienced became so intolerable she turned in her resignation constituting her constructive discharged from State Farm.

## COUNT 1
### Title VII, 42 U.S.C. § 2000(e), et seq.
### Discrimination, Harassment, and Hostile Work Environment Claim

40. Each of the foregoing paragraphs are incorporated herein as if fully restated.

41. As an African American, Ms. Jackson-Johnson is a member of a protected class.

42. As described above, State Farm's conduct towards Ms. Jackson-Johnson was discriminatory and occurred because of and based upon Ms. Jackson-Johnson's race.

43. State Farm's conduct occurred over several months, constituting a continuing course of discrimination towards Plaintiff.

44. State Farm committed an unlawful employment practice by treating Plaintiff differently because of her race, causing a change in the condition of her employment and subjecting her to a hostile work environment.

45. Plaintiff was subjected to a racially discriminatory environment that was both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that Plaintiff in fact did perceive to be so.

46. State Farm's conduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance.

47. State Farm's conduct had the purpose or effect of creating an intimidating, hostile and offensive work environment.

48. State Farm's actions permeated the workplace with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive and regular to alter the conditions of Plaintiff's employment and create an abusive working environment.

49. State Farm's racist and discriminatory conduct created a hostile work environment for Plaintiff.

50. Plaintiff was subjected to a racially discriminatory and hostile work environment that was both objectively and subjectively offensive, one that a reasonable employee in Plaintiff's position would have felt compelled to resign from.

51. State Farm was aware of the racially discriminatory and hostile work environment and failed to remedy these working conditions.

52. State Farm's racist and discriminatory conduct resulted in Plaintiff's constructive discharge.

53. State Farm willfully and intentionally subjected Plaintiff to racial discrimination.

54. State Farm knew its actions violated Title VII or it was recklessly indifferent in that regard.

55. Defendant State Farm has therefore denied Plaintiff her rights under the Civil Rights Act of 1964 and she has suffered damages as a direct result of her rights being violated.

56. As a direct and proximate result of the foregoing, Plaintiff has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, and other damages to be determined at trial. Plaintiff claims compensatory and punitive damages for these losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

## COUNT II
### Title VII, 42 U.S.C. §2000(e)-(3)
### Retaliation

57. Each of the foregoing paragraphs are incorporated herein as if fully restated.

58. Plaintiff engaged in a statutorily protected activity when she reported racism, discrimination, and a hostile work environment to State Farm.

59. State Farm and its agents intentionally retaliated against Plaintiff in response to her reporting.

60. State Farm took a materially adverse action against Plaintiff when State Farm demoted her and constructively discharged her.

61. These adverse actions were directly related and causally connect to Plaintiff's reporting of State Farm's racist, discriminatory, and hostile conduct.

62. These adverse actions were in direct violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

63. By reason of this retaliation by State Farm, Plaintiff suffered a loss of earnings and benefits, in addition to suffering great pain, distress, anxiety, and mental anguish, all to her damage.

64. As a direct and proximate result of the foregoing, Plaintiff has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, and other damages to be determined at trial. Plaintiff claims compensatory and punitive damages for these losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

**COUNT III**
**Civil Rights Act of 1866, 42 U.S.C. § 1981**
**Intentional Racial Discrimination and Hostile Work Environment**

65. Each of the foregoing paragraphs are incorporated herein as if fully restated.

66. As described above, State Farm's conduct towards Plaintiff was discriminatory and occurred because of and based upon Plaintiff's race.

67. State Farm willfully and intentionally subjected Plaintiff to racial discrimination.

68. State Farm knew its actions violated Section 1981 of the Civil Rights Act of 1866 or it was recklessly indifferent in that regard.

69. Defendant has therefore denied Plaintiff her rights under Section 1981 of the Civil Rights Act of 1866 and she has suffered damages as a direct result of her rights being violated.

70. As a direct and proximate result of the foregoing, Plaintiff has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, and other damages to be determined at trial. Plaintiff claims compensatory and punitive damages for these losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

### COUNT IV
### Civil Rights Act of 1866, 42 U.S.C. § 1981
### Retaliation

71. Each of the foregoing paragraphs are incorporated herein as if fully restated.

72. Plaintiff engaged in a statutorily protected activity when she reported racism and discriminatory conduct to State Farm.

73. State Farm and its agents intentionally retaliated against Plaintiff in response to her reporting.

74. State Farm took a materially adverse action against Plaintiff when State Farm demoted her and constructively discharged her.

75. State Farm's actions in this regard were willful, intentional, and based upon Plaintiff race.

76. State Farm knew its actions violated Section 1981 of the Civil Rights Act of 1866 or it was recklessly indifferent in that regard.

77. These adverse actions were directly related and causally connected to Plaintiff's reporting of State Farm's racism and discriminatory conduct.

78. These adverse actions were in direct violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

79. By reason of this retaliation by State Farm, Plaintiff suffered a loss of earnings and benefits, in addition to suffering great pain, distress, anxiety, and mental anguish, all to her damage.

80. As a direct and proximate result of the foregoing, Plaintiff has suffered, and will continue to suffer, damages including, but not limited to, loss of front and back wages, earnings, benefits, insurance premiums, emotional distress, and other damages to be determined at trial. Plaintiff claims compensatory and punitive damages for these losses and injuries under § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Plaintiff, by and through her attorneys, Hart McLaughlin & Eldridge, LLC, and Ben Crump Law, respectfully requests that the Court enter an Order granting the following relief against the Defendant, State Farm Mutual Automobile Insurance Company:

A. Awarding Plaintiff actual damages;

B. Awarding Plaintiff lost wages;

C. Awarding Plaintiff damages for her emotional distress;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff her reasonable attorneys' fees and litigation costs; and

F. Awarding such other and further relied as the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff demands a trial by jury in this action on each and every one of her claims.

Dated: January 13, 2022

    Respectfully Submitted,

    /s/ Robert J. McLaughlin, Esq.

Robert J. McLaughlin, Esq.
Steven A. Hart, Esq.

Carter D. Grant, Esq.
**Hart McLaughlin & Eldridge, LLC**
1 S. Dearborn St., Suite 1400
Chicago, Illinois 60603
Tel:  (312) 955-0545
Fax: (312) 971-9243
FIRM ID: 59648
rmclaughlin@hmelegal.com
shart@hmelegal.com
cgrant@hmelegal.com

Benjamin Crump
**BEN CRUMP LAW**
122 S. Calhoun Street
Tallahassee, Florida 32301
P. (800) 713-1222
ben@bencrump.com